UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| WILLIAM A. DOYLE, III, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 6: 18-05-DCR |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Inmate/Plaintiff William Doyle, III is confined at the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. Proceeding without an attorney, Doyle has filed a civil rights Complaint against the United States and Defendants Mark S. Inch (Director of the BOP), J. Ray Ormond (Warden of USP-McCreary), Lieutenant B. Messer (supervisor at USP-McCreary), and Officer R. Wilson (employee of USP-McCreary). He asserts claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq*. ("FTCA"), the Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. § 2000bb–1 to –4, and the Fifth Amendment. [Record No. 1, 7]

Shortly after filing his original Complaint [Record No. 1], Doyle filed a Supplemental Complaint [Record No. 7], seeking to add an additional claim under the RFRA ("Count 3") which had not been administratively exhausted when he filed his original Complaint. Although Doyle did not seek the Court's permission to do so, the Court will construe the filing of the Supplemental Complaint as a motion seeking leave to file a supplemental pleading under

-1-

Rule 15(d) of the Federal Rules of Civil Procedure which provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The request to file the supplemental pleading will be granted. For clarification purposes, because the Supplemental Complaint also re-states the same claims made in the original Complaint in full, the Supplemental Complaint will be considered the operative pleading in this action.[1]

The Court conducts a preliminary review of Doyle's Supplemental Complaint because he asserts claims against government officials. 28 U.S.C. §1915A. The Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

When testing the sufficiency of Doyle's Supplemental Complaint, the Court affords it a forgiving construction, accepting as true all non-conclusory factual allegations and liberally construing its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012). And while the Court has an obligation to liberally construe a complaint filed by a person proceeding without counsel, it has no authority to create arguments or claims that the plaintiff has not made. *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation."). Vague allegations that one or more of the defendants acted wrongfully or

---

[1] Doyle indicates that, other than the addition of "Count 3", there is only one minor, inconsequential difference between the original Complaint and the Supplemental Complaint. [Record No. 7 at p. 1, FN1]

violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).

**I.**

Doyle's Supplemental Complaint contains three Counts. And all generally relate to his religious practices as a member of the Muslim faith. [Record No. 7 at ¶9]. In Count 1, Doyle challenges the validity of the policies of the Bureau of Prisons ("BOP") and USP-McCreary authorizing inmates to pray only individually or in small groups of two or three persons. [*Id*. at ¶¶54-57] Specifically, he alleges that these policies are "unconstitutional on their face" and as applied to him under the RFRA. [*Id*. at ¶55]. In Count 2, Doyle seeks to bring an equal protection claim under the Fifth Amendment as a "class of one," alleging that there is an ongoing conspiracy by some employees at USP-McCreary to deny him equal protection of the law. [*Id*. at ¶¶58-69]. Doyle alleges in Count 3 that USP-McCreary's policies relating to the administration of medication to him and other inmates who fast during the month of Ramadan are "unconstitutional on their face" and violate the RFRA. [*Id*. at ¶¶70-83]

Although Doyle generally claims to be proceeding against the United States pursuant to the FTCA, any such claim is barred by sovereign immunity. As a sovereign entity, the United States is immune from claims against it. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Although the FTCA constitutes a limited waiver of that immunity for the negligence of government employees, Doyle does not allege negligence on the part of any government employee. Moreover, the United States has not explicitly waived sovereign immunity for constitutional torts committed by government employees. *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). Thus, to the extent that Doyle seeks to pursue a claim against the United States under the FTCA, this claim will be dismissed for lack of subject matter jurisdiction.

## II.

Doyle alleges in his Supplemental Complaint that on two different occasions in September 2016, he and/or other Muslim inmates with whom he was praying were informed by Defendant Lt. Messer that they could only pray in a group of two or three. [Record No. 7 at ¶¶ 19-27, 29] He further contends that the long-held policies of both the BOP and USP-McCreary restrict inmate prayer to small groups of two to three inmates. [*Id*. at ¶¶ 16, 30-32, 55]

Doyle claims in Count 1 that these policies are "unconstitutional on their face" and as applied to him under the RFRA. [Record No. 7 at ¶55] To prevail on this claim, Doyle "must establish that no set of circumstances exists under which the [challenged policies] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See also Cincinnati Women's Services, Inc. v. Taft*, 468 F.3d 361, 368 (6th Cir. 2006). While prisoners retain the right to the free exercise of their religion, "the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs." *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985). When addressing a challenge to a prison regulation impacting religious expression, a court must "balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons." *Id*.; *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987). Even if a policy is found to infringe on an inmate's First Amendment rights, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In the prison context, maintaining order and safety is a compelling interest. *See Hoevenaar v. Lazaroff*, 422 F.3d 366, 369-70 (6th Cir. 2005); *Jones v. Shabazz*, 352 Fed. App'x. 910, 915 (5th Cir. 2009). Moreover, circumstances exist where limiting inmate prayer

to groups of two or three persons is reasonably related to this interest. Thus, because there are a set of circumstances that exist under which these policies are valid, Doyle's claim that these policies are unconstitutional on their face fails as a matter of law. As a result, to the extent that Count 1 alleges that the policies are unconstitutional on their face, this portion of Doyle's Supplemental Complaint will be dismissed.

To the extent that Doyle alleges that the application of these policies to him violate the RFRA, the RFRA prohibits the federal government from "substantially burden[ing]" a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate that "application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(a), (b). Thus, even if Doyle establishes that the policies "substantially burdened" his exercise of religion, there is no violation of the RFRA if the defendants can demonstrate that applying the policies to Doyle is the least restrictive means of furthering a compelling governmental interest. *See Equal Employment Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, No. 16-2424, --- F.3d ---, 2018 WL 1177669, at *14 (6th Cir. Mar. 7, 2018). As this is an affirmative defense, the Court finds that a response is required with respect to this portion of Doyle's claim in Count 1.

### III.

Doyle seeks to assert in Count 2 a "class-of-one" equal protection claim pursuant to *Bivens*. This claim is based on an allegation of an ongoing conspiracy by USP-McCreary

employees to deny him equal protection of the law implicit in the Fifth Amendment[2] by discriminating against him for saying an Islamic prayer in the dining hall. [Record No. 7 at ¶¶58-69] However, this claim is barred by sovereign immunity to the extent Doyle seeks to pursue this *Bivens* claim against the defendants in their official capacities. A suit against a government employee in his or her "official capacity" is not a claim against the employee for his or her conduct while performing job duties for the government. Instead, it is a claim against the government agency that employs the individual. Thus, an official capacity suit against a BOP employee is a suit against the BOP, which is a federal agency. While *Bivens* authorizes suits against federal employees for violations of civil rights, it does not waive the sovereign immunity enjoyed by the United States and its agencies. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003).

To recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). The mere fact of supervisory capacity is not enough: respondeat superior is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). The only defendants that Doyle suggests were personally involved in the alleged conspiracy to deprive

---

[2] When federal legislation is involved, "the applicable equality guarantee is not the Fourteenth Amendment's explicit Equal Protection Clause, it is the guarantee implicit in the Fifth Amendment's Due Process Clause. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n. 1 (2017) (citations omitted).

him of his equal protection rights are Lt. Messer and Officer Wilson. Thus, he alleges no basis for imposing liability on Director Inch or Warden Ormond regardomg this claim.

Moreover, to state a claim alleging a *Bivens* conspiracy, Doyle must allege "an agreement between two or more persons acting in concert to deprive a person of his constitutional rights, and an overt act done in furtherance of the conspiracy causing injury." *Uduko v. Cozzens*, 975 F.Supp.2d 750, 757 (E.D. Mich. 2013) (citing *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Here, Doyle fails to allege the existence of an agreement between "some employees at USP-McCreary" to discriminate against him with *any* specificity, nor does he otherwise allege facts to support such a claim. Nor does he allege any facts to support his conclusory allegation that the defendants acted with discriminatory intent. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (Federal Rules of Civil Procedure "do not require courts to credit a complaint's conclusory statements" of discriminatory intent "without reference to its factual context."). At best, Doyle alleges a series of acts by different individuals. He then asserts, based on nothing but his own conclusions, that these actions were part of a conspiracy to discriminate against him based on his religion. Such vague and conclusory allegations unsupported by facts are insufficient to state a conspiracy claim. *Uduko*, 975 F.Supp.2d at 757.

Moreover, Doyle purports to bring this claim as a "class of one" claim. [Record No. 7 at ¶ 68] In a class-of-one equal protection claim, the plaintiff "does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against [him or] her *in particular* and therefore treated

[him or] her arbitrarily." *Davis*, 679 F.3d at 441 (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) (emphasis in original)). To state such a claim, a plaintiff must allege that he, as an individual, has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). *See also Flinchum v. City of Beattyville*, 224 F. Supp. 3d 536, 541–43 (E.D. Ky. 2016).

Doyle claims that "[i]nmates of other faiths pray more than three on the yards, in the dining hall, and at the tables in the Housing Unit," but have not been treated the way that the USP-McCreary staff has treated him in response to his dining hall prayer. [Record No. 7 at ¶69] However, Doyle makes no allegations that these inmates (for whom he provides no other identifying information) are similarly-situated to him in all material respects, or that the difference in treatment was without a rational basis. Therefore, Doyle has failed to adequately plead a "class of one" equal protection claim. *Clark v. Johnson*, 413 F. App'x 804, 817-18 (6th Cir. 2011).

In summary, Count 2 of Doyle's Supplemental Complaint fails to state a class-of-one *Bivens* equal protection claim.

**III.**

Count 3 of Doyle's Supplemental Complaint relates to the administration of medication to fasting inmates during the month of Ramadan. Doyle claims that the fasting required during Ramadan does not permit anything (food, drink, or medication) to enter the mouth and be swallowed down the throat after the morning prayer is said between 4:50 a.m. and 4:57 a.m. [Record No. 7 at ¶75] Doyle states that the projected dates for Ramadan 2017 were Friday, May 26, 2017, until Saturday, June 24, 2017. [*Id.* at 72] He alleges that, although he and other

Muslims received their medication at the 9:00 p.m. pill line, the Health Services Department did not initially provide morning medication prior to the time the Department opened at 6:00 a.m. and, due to fasting, Doyle needed to take his morning medication before 4:50 a.m. [*Id*. at ¶74]. He claims that, although he sent an e-mail on May 15, 2017, requesting that he be taken off of the pill line and instead be given his morning pills to take in his cell (referred to as "self-carrying" his medication), he did not receive morning medication to self-carry prior to the mornings of May 27, 28, 29, or 30. [*Id*. at ¶76, 78][3]

But Doyle also acknowledges that after he filed a formal administrative remedy request seeking to self-carry his morning medications during religious fasting, his request for a religious accommodation was approved. [*Id*. at ¶79] Notably, Doyle makes no allegation he was prevented from self-carrying his morning medications after his request was approved. Instead, he alleges that the approval of his request "did not address other fasting inmates." [*Id*. at ¶ 79] With respect to these inmates, he alleges that USP-McCreary's policies relating to the administration of medication to Doyle and other inmates fasting during the month of Ramadan are unconstitutional on their face and in violation of the RFRA. [*Id*. at ¶¶79] He further requests that, during the projected dates for Ramadan 2018 (May 17-June 15, 2018), the defendants be ordered to accommodate fasting inmates who need the morning pill line. [*Id*. at ¶83]

Doyle does not have standing to assert claims on behalf of other inmates. "Generally, 'a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on

---

[3]Although Doyle alleges that his e-mail request was forwarded to his provider on May 16, 2017, according to one of the responses to Doyle's administrative remedy requests, BOP staff conducted a thorough search of his records and did not find an inmate request to a staff member dated May 16, 2017. [*Id*. at ¶77, 81; Record No. 7-2 at p. 4]

the legal rights or interests of third parties.'" *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (quoting *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (other citations omitted). Thus, Doyle may only pursue claims in this case made on his own behalf.

In addition, his allegation that USP-McCreary's medication administration policies are unconstitutional "on their face" fails. The BOP certainly has a legitimate interest in regulating the administration of medications to prisoners and Doyle has failed to show that no set of circumstances exist under which USP-McCreary's policies related to the administration of medication to fasting inmates is unconstitutional. Indeed, Doyle's claims that the medication administration policy is unconstitutional and violates the RFRA are undercut by his own admission that his request to self-carry his medication was granted once it was received. To the extent that he suggests that he was unable to self-carry his morning medication on the nights before May 27, 28, 29, and 30, 2017, his allegations establish that this was because of his failure to timely request permission, rather than because of a particular BOP or USP-McCreary policy established in violation of the RFRA.

But even if the Court assumed that Doyle's failure to receive his morning medication on these four days violated the RFRA, he still has failed to state a claim for which relief may be granted. To the extent that Doyle seeks money damages based on these alleged RFRA violations, money damages are not available to Doyle with respect to this claim. The RFRA does not unequivocally waive federal sovereign immunity and, therefore, the RFRA does not authorize suits for money damages against federal officers in their official capacities. *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015). *See also Webman v. Fed. Bureau of Prisons*,

441 F.3d 1022, 1026 (D.C. Cir. 2006) ("RFRA does not waive the federal government's sovereign immunity for damages.").

And even if money damages were available against a federal officer sued in their individual capacity for a violation of the RFRA, Doyle fails to allege that any individual defendant denied his request for permission to self-carry his morning medication to his cell the night before during fasting. The only defendant that Doyle alleges had any personal involvement with respect to this claim – Warden Ormond – informed Doyle that his request for an accommodation had been granted. [Record No. 7 at ¶79; Record No. 7-2 at p. 6] Absent any allegation of personal involvement, there are no viable defendants identified against whom he may proceed.

Moreover, to the extent that Doyle seeks prospective relief in the form of an injunction requiring prison officials at USP-McCreary to permit all Muslim inmates to self-carry their morning medications during Ramadan 2018, Doyle has alleged no facts suggesting that any individual accommodation requests to self-carry medication during Ramadan 2018 will not be granted. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges a real and immediate—as opposed to a merely conjectural—threat of future injury." *Mosier v. Kentucky*, 675 F. Supp. 2d 693, 697 (E.D. Ky. 2009) (citation omitted). Here, rather than allege a threat of future injury, Doyle's allegations establish that past individual requests to self-carry medication were granted. Thus, injunctive relief is not appropriate.

Count 3 of Doyle's Supplemental Complaint fails to state a claim upon which relief may be granted. Accordingly, this Count will be dismissed.

## IV.

Doyle has filed a motion for preliminary injunction related to his claim in Count 1 regarding the validity of the restrictions on group prayer by inmates. He asks the Court enjoin the defendants from restricting size of the inmate prayer groups to two to three inmates. [Record No. 18] "A preliminary injunction is an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial." *Hall v. Edgewood Partners Insurance Center, Inc.*, 878 F.3d 524, 526 (6th Cir. 2017)(citations omitted). Such an "extraordinary and drastic" remedy should "only be only be awarded upon a clear showing that the plaintiff is entitled to such relief," *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)(quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Doyle has not provided the Court with an adequate evidentiary foundation or legal basis upon which to conclude that such drastic relief is warranted at this juncture. In determining whether to grant injunctive relief, the Court considers whether: (1) the moving party has shown a strong likelihood that she will succeed on the merits; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) granting the injunction will cause substantial harm to others; and (4) the public interest would be served by the injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). These elements are factors to be considered and balanced in each case, not rigid requirements. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). While "no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Doyle's claim that the prison policy of limiting prayer groups to two or three inmates violates the RFRA is of questionable legal merit. In his motion, he offers only his own conclusory allegations that his religious practices have been "substantially burdened" by these policies. Moreover, he concedes that "[t]he Defendants undoubtedly [have] a compelling interest in maintaining prison security." [Record No. 18 at ¶ 13] Indeed, in interpreting the similar "compelling interest" requirements of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1,[4] the Supreme Court has explained that it does "not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

Given the conclusory nature of Doyle's allegations and the government's compelling interest in prisoner safety and security, the Court finds that Doyle falls well short of establishing adequate grounds for a preliminary injunction. Thus, his motion will be denied.

## V.

In summary, the Court will dismiss Doyle's FTCA claim against the United States, as well as Counts 2 and 3 of Doyle's Supplemental Complaint in their entirety. The Court will also dismiss Doyle's claim in Count 1 to the extent that he alleges that the policies of the BOP and USP-McCreary limiting the size of prayer groups to two or three inmates is unconstitutional on its face. However, the Court finds that a response from the defendants is

---

[4]The RLUIPA and the RFRA are sister statutes. The RLUIPA was enacted to apply to states and their subdivisions after the Supreme Court held in *City of Boerne v. Flores*, 521 U.S. 507 (1997), that Congress exceeded its powers in making the RFRA applicable to the States and their subdivisions. *Holt v. Hobbs*, 135 S.Ct. 853, 859-860 (2015). The statutory language of the RLUIPA regulating religious exercise by institutionalized persons, 42 U.S.C. § 2000cc-1, mirrors that of the RFRA. *Id*. at 860.

required with respect to Doyle's claim in Count 1 that the application of these policies to Doyle violates the RFRA.

The Court will direct the United States Marshals Service ("USMS") for the Eastern District of Kentucky to serve the defendants with the summons and Supplemental Complaint on Doyle's behalf, in accordance with the instructions set forth below. Fed. R. Civ. P. 4(c)(3). Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Doyle's construed motion seeking leave to file a supplemental pleading under Fed. R. Civ. P. 15(d) is **GRANTED**. Doyle's Supplemental Complaint [Record No. 7] is accepted for filing and is deemed to be the operative pleading in this action.

2. Doyle's FTCA claim against the United States of America is **DISMISSED WITH PREJUDICE**.

3. Counts 2 and 3 of Doyle's Supplemental Complaint [Record No. 7] are **DISMISSED WITH PREJUDICE** for failure to state a claim.

4. To the extent that Count 1 of Doyle's Supplemental Complaint [Record No. 7] alleges that the policies of the BOP and USP-McCreary limiting the size of prayer groups to two or three inmates is unconstitutional on its face, this claim is **DISMISSED WITH PREJUDICE** for failure to state a claim. Count 1 of the Supplemental Complaint remains pending only to the extent that Doyle alleges that application of the policies of the BOP and USP-McCreary limiting the size of prayer groups to two or three inmates to Doyle violates the RFRA.

5. Doyle's Motion for Preliminary Injunction [Record No. 18] is **DENIED**.

6. The Clerk of the Court shall prepare 5 "Service Packets" for service upon the United States of America and the defendants. Each Service Packet shall include:

   a. a completed Summons form;

   b. the Supplemental Complaint [Record No. 7];

   c. this Order; and

   d. a completed USM Form 285.

7. The Clerk shall deliver the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket.

8. The USMS shall serve the United States of America by sending a Service Packet by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and the Office of the Attorney General of the United States in Washington, D.C.

9. The USMS shall serve Defendant Mark S. Inch, Director of the Federal Bureau of Prisons, by sending a Service Packet by certified or registered mail to: (A) the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; (B) the Office of the Attorney General of the United States in Washington, D.C; and (C) the Central Office of the Federal Bureau of Prisons in Washington, D.C.

10. The USMS shall personally serve Defendants J. Ray Ormond (Warden), Lt. B. Messer, and Officer R. Wilson at USP-McCreary in Pine Knot, Kentucky through arrangement with the Federal Bureau of Prisons.

11. Doyle must immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

12. If Doyle wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office. Every motion Doyle files must include a written certification that he has mailed a copy of it to the defendants or their counsel and state the date of mailing. **The Court will disregard letters sent to the judge's chambers or motions lacking a certificate of service.**

This 16th day of March, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge